# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| BRUDNELL BRADLEY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:08-CV-366-JVB |
| | ) |
| SGT. K. TIBBLES, individually and in | ) |
| her capacity as Correctional Officer, and | ) |
| THE INDIANA DEPARTMENT OF | ) |
| CORRECTION, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Brudnell Bradley, a recreation leader at the Indiana State Prison in LaPorte, Indiana, sued Defendants Sergeant K. Tibbles, a correctional officer at the Indiana State Prison; the Indiana Department of Correction; and Major Robert Cabanaw, Mark Levenhagen, and Carl Gast, supervisory personnel of the Department. Plaintiff, an African-American, alleges that Tibbles, a white woman, discriminated against him because of his race by making false incident reports to his supervisors and retaliating against him after he filed a grievance against her.

Plaintiff claims that all Defendants are liable under Title VII of the Civil Rights Act of 1964 for creating a hostile work environment and retaliation. Plaintiff also contends that all Defendants are liable under Indiana law for gross negligence, intentional infliction of emotional distress, and violation of and conspiracy to violate Indiana's RICO act. Defendants moved for partial judgment on the pleadings, requesting that the Court dismiss both Defendant Tibbles from the suit and Plaintiff's Indiana RICO claim.

**A. Standard for Evaluating a Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is evaluated by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004)).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "[T]he tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 570). A court will view all well-pleaded allegations in a light most favorable to the plaintiff. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

**B. Factual and Procedural Background**

Plaintiff is an African-American man and has worked for Defendant Indiana Department of Correction for about twenty years. At all times relevant to this case, Plaintiff was employed as a recreational leader at the Indiana State Prison in LaPorte, Indiana. At the same time, Defendant Tibbles was employed at the prison as a correctional officer. According to Plaintiff, Tibbles—acting both within and clearly outside the scope of her employment—harassed and prevented Plaintiff from doing his job for a period of nine months.

Beginning on December 28, 2006, Tibbles reported that Plaintiff left her alone in a recreation area with all the residents; as a result, Tibbles claimed that she had to clear the recreation area by herself. However, Plaintiff asserts that Tibbles's report was false because the prison's time log does not show Tibbles working that evening.

Another incident occurred on January 10, 2007. According to Plaintiff, Tibbles shut off the showers in the recreation area while residents were still showering. Tibbles's actions angered the residents and placed the recreation staff in danger. The recreation staff gained control of the situation, and, the next day, a member of the staff reported the incident to Defendant Mark Levenhagen, the prison superintendent. As a result, Tibbles's superiors instructed her to leave the shower operations to the recreation staff.

On the same day the incident was reported to Levenhagen, Tibbles made three reports to Defendant Major Robert Cabanaw. The reports alleged misconduct by members of the recreation staff; Tibbles claimed that members of the recreation staff were participating in recreation activities with residents and going on unknown errands. One report stated that Plaintiff was playing cards with a resident.

On January 13, 2007, Tibbles filed another report with Cabanaw. Again, Tibbles claimed that Plaintiff was playing cards. Plaintiff contends that he and another recreation leader, Tracey Young, were instructing Mr. Stroud about the rules of a game called "Bid Whist." Mr. Stroud had to oversee the game, which the residents would be playing on Martin Luther King Day. As a result of Tibbles's complaint, Plaintiff was sent a "Notice of Pre-Deprivation Meeting for 'Violation of Information and Standards of Conduct, and Dereliction of Duty.'" (Pl.'s Group Ex. 1, Compl. to Harold Walker at 3.)

On February 14, 2007, Tibbles instructed a recreation gate officer to log the times that recreation officers entered and left the recreation area. According to Plaintiff, this made the recreation staff feel as though Tibbles was "attempting to manufacture a circumstantial case against them." (Pl.'s Group Ex. 1, Compl. to Harold Walker at 1.) Plaintiff claims that the recreation coordinator, Stephen D. Helton, addressed the issue "with unknown results." (Pl.'s Group Ex. 1, Compl. to Harold Walker at 1.)

Plaintiff believed that Tibbles's conduct toward him was racially motivated because he is an African-American and Tibbles is white. Thus, on March 28, 2007, Plaintiff filed a charge of discrimination against Indiana State Prison and the Indiana Department of Correction.

According to Plaintiff, Tibbles escalated her discriminatory actions toward him in retaliation for filing the charge. On September 20, 2007, Plaintiff was informed that Tibbles had again requested that the recreation staff's activities be logged. Officer Lindsey told Plaintiff that Cabanaw may have given this order to Tibbles.

In response, Plaintiff filed another charge of discrimination on October 2, 2007. Plaintiff's complaint with the Michigan City Human Rights Commission alleged that

4

Tibbles retaliated against him in violation of Title VII because of his previous charge of discrimination. Plaintiff also claimed that his employer knew of Tibbles's actions but did nothing to remedy the situation.

On November 9, 2007, the Equal Employment Opportunity Commission (EEOC) issued a notice of dismissal to Plaintiff, in response to his first charge of discrimination. The notice informed him of his right to sue under federal law within ninety days of receiving the notice.

On July 2, 2008, Plaintiff filed suit against Defendants in the LaPorte County Superior Court. Plaintiff alleged hostile work environment and retaliation claims under Title VII. Plaintiff claimed that Tibbles discriminated against him because of his race by making false incident reports and that she retaliated against him after he filed a grievance against her. Plaintiff also asserted the following claims under Indiana law: negligent supervision, negligent retention, gross negligence, violation of and conspiracy to violate Indiana's RICO Act, and intentional infliction of emotional distress.

On August 11, 2008, Defendants removed the suit to this Court pursuant to 28 U.S.C. §§ 1331, 1367, & 1441(b).

On September 17, 2008, the EEOC issued a notice of dismissal to Plaintiff, in response to his second charge of discrimination. The notice stated that the EEOC was unable to conclude that the information obtained through its investigation established a violation of Title VII. The notice also informed Plaintiff of his right to sue under federal law within ninety days of receiving the notice.

On December 22, 2008, Defendants moved for partial judgment on the pleadings, requesting that this Court dismiss Plaintiff's Indiana RICO claim against all Defendants

and that it dismiss Defendant Tibbles from Plaintiff's Title VII and Indiana state law claims.

**C. Discussion**

**(1)** *Claims Against Tibbles*

(a) *Title VII*

Defendants contend that Tibbles is not an "employer" within the meaning of Title VII, and, as such, she should be dismissed from Plaintiff's Title VII claim.

Title VII is enforced against an "employer." 42 U.S.C. § 2000e-5(a)–(b). An individual supervisor is not an "employer" for purposes of Title VII. *Molnar v. Booth*, 229 F.3d 593, 599 (7th Cir. 2000).

Tibbles is neither Plaintiff's supervisor nor employer; she is Plaintiff's coworker. Therefore, Tibbles will be dismissed from Plaintiff's Title VII claim.

(b) *ITCA Claim*

Defendants claim that the Indiana Tort Claims Act (ITCA) bars Plaintiff's state law claims against Tibbles. Defendants argue that Tibbles's actions—reporting employee misconduct, turning off showers, and directing officers to log the recreation staff's activities—were within the scope of her employment. In response, Plaintiff contends that Tibbles was acting outside the scope of her employment because harassment and retaliation do not further the business of the Indiana Department of Correction.

The ITCA authorizes civil suits against government entities and government employees. Ind. Code §§ 34-13-3-1 *et seq*. However, the ITCA provides immunity to a

government employee for conduct within the scope of the employee's employment. *Celebration Fireworks, Inc., v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000); *Higgason v. State*, 789 N.E.2d 22, 29 (Ind. Ct. App. 2003) ("A plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his or her employment."). An allegation in a complaint that an employee acted within the scope of his or her employment bars a claim against the employee. Ind. Code § 34-13-3-5(b). Immunity for public employees ensures that they will exercise independent judgment over decisions within the scope of their employment without the threat of litigation. *Celebration Fireworks*, 727 N.E.2d at 452 (quoting *Ind. Dept. of Correction v. Stagg*, N.E.2d 1338, 1343 (Ind. Ct. App. 1990)).

In determining whether conduct is within the scope of employment, Indiana courts have looked to the Restatement of Agency for guidance: "To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Id.* at 453 (quoting Restatement (Second) Agency § 229 (1958)). To be incidental to authorized conduct, the action must be "subordinate to or pertinent to an act which the servant is employed to perform." *Id.* (quoting Restatement (Second) Agency § 229 cmt. b (1958)). The United States Supreme Court has stated that actions occurring within the scope of employment are of a kind that an employee is hired to perform, occur "substantially within the authorized time and space limits" of the employment, and are done, at least in part, to serve the employer. *Faragher v. City of Boca Raton*, 524 U.S. 775, 793 (1998) (quoting Restatement (Second) Agency § 228(1)). Even a tortious act may be within the scope of employment if its "purpose was, to an

appreciable extent, to further [the] employer's business." *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993).

Plaintiff has failed to sufficiently allege that Tibbles acted outside the scope of her employment. During the course of allegedly prohibited conduct, Tibbles reported employee misconduct to her superiors. Her reports were directed for the promotion of safety and efficiency in the prison and, thus, furthered the business of the Indiana Department of Correction. *See Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir. 1998) (stating that accusations of retaliation made against supervisor partially promoted the employer's interest in a safe workplace); *see also Smith v. Ind. Dep't of Correction*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) (stating that maintaining prison security is clearly within a prison officer's scope of employment). Similarly, controlling the inmates' showers and directing officers to log recreation staff activities furthers, at least in part, the Indiana Department of Correction's interests in prison efficiency and safety. Therefore, Tibbles acted within the scope of her employment, and Plaintiff is prohibited from pursuing state law claims against her that arose out of these incidents.

Plaintiff's argument that harassment and retaliation fall outside the scope of Tibbles's employment fails. The contention that Tibbles's conduct constituted harassment and retaliation is a legal conclusion. Further, Tibbles's actions, even if motivated primarily by ill will toward Plaintiff, were within the scope of her employment because she was, at least partially, serving her employer's interests. *See City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999) ("An employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer."); *Taboas*, 149 F.3d at 583 ("Even if the defendants were motivated primarily

by ill will . . . their actions nevertheless fall within the scope of employment so long as they are 'actuated, at least in part, by a purpose to serve the master.'").

Therefore, the ITCA bars Plaintiff's state law claims against Tibbles.

**(2)** *Claim Against All Defendants: Violation of Indiana RICO Act*

Plaintiff claims that Defendants conspired to violate and violated Indiana's RICO act. Defendants respond that Plaintiff has failed to sufficiently allege facts showing that Defendants engaged in predicate crimes constituting a "pattern of racketeering activity."

Indiana's RICO law criminalizes acts of corrupt business influence. Ind. Code § 35-45-6-2. In addition, Indiana law provides that a person who has suffered damages or harm as a result of a corrupt business influence may sue the entity for damages or injunctive relief. Ind. Code §§ 34-6-2-6, 34-24-2-6. One way a person can commit acts of corrupt business influence is if he or she is (1) employed or associated with an enterprise and (2) knowingly or intentionally (3) conducts or participates in the activities of the enterprise (4) through a pattern of racketeering activity. Ind. Code § 35-45-6-2(3).

The first three elements are not contested: Tibbles and the other individual defendants were employed by the Indiana Department of Correction (an enterprise) and knowingly or intentionally participated in the Department's business. *See* Ind. Code § 35-45-6-1(c)(1) (stating that an "enterprise" includes a government entity). Rather, the parties dispute whether there are adequate facts to support the fourth element—a pattern of racketeering activity. Thus, the Court must consider whether Plaintiff's complaint

alleges sufficient facts to show that (1) Defendants committed crimes constituting racketeering activity and (2) the racketeering activity constituted a "pattern."

(a) *Crimes Constituting Racketeering Activity*

In his second amended complaint, Plaintiff asserts that Defendants engaged in two crimes constituting racketeering activity: obstruction of justice and official misconduct. Defendants contend that Plaintiff failed to allege sufficient facts to support such racketeering activities.

Racketeering activity means to commit, attempt to commit, conspire to commit, or aid and abet a violation of a crime listed in § 35-45-6-1(e). Obstruction of justice and official misconduct are listed in § 35-45-6-1(e) as crimes constituting racketeering activity.

Although a person can obstruct justice in a variety of ways, Plaintiff's claim that Tibbles made false reports raises only one theory—making or presenting a false record or document with the intent that the record or document appear in evidence in an official proceeding or investigation to mislead a public servant. Ind. Code § 35-44-3-4(a)(4). An "official proceeding" is a proceeding held or that may be held before a judicial, administrative, legislative, or other agency or before an official authorized to take evidence under oath in connection with a proceeding. Ind. Code § 35-41-1-20.

On the basis of Plaintiff's factual allegations, the Court cannot reasonably infer that Defendants obstructed justice. Plaintiff has not alleged facts indicating that he was

the subject of an official proceeding. Nor has Plaintiff alleged facts indicating that he was being investigated. Plaintiff has not even alleged that a meeting regarding misconduct ever took place or that he was disciplined; rather, he simply alleges that he received a notice of a meeting for misconduct and dereliction of duty. The Court cannot reasonably infer that Tibbles's filing of several misconduct reports and Plaintiff's receiving a notice to attend a meeting amounted to an official proceeding or an investigation.

The Court next considers Plaintiff's claim that Defendants committed official misconduct. A public servant commits official misconduct when he or she "knowingly or intentionally performs an act that the public servant is forbidden by law to perform." Ind. Code § 35-44-1-2(1). The act forbidden by law must be a criminal act related to the performance of the public servant's official duties. *Heinzman v. State*, 895 N.E.2d 716, 723 (Ind. Ct. App 2008) (citing *State v. Dugan*, 793 N.E.2d 1034, 1039 (Ind. 2003)). To prove official misconduct, the plaintiff must prove the elements of the underlying criminal act. *See Daugherty v. State*, 466 N.E.2d 46, 53 (Ind. Ct. App. 1984) ("One element of the official misconduct charge was proof that battery was committed; proving the battery encompassed the usual elements of battery.").

In his pleadings, Plaintiff has failed to allege sufficient facts indicating a criminal act related to the performance of Defendants' official duties that would support a plausible claim of official misconduct. In fact, Plaintiff has not alleged what underlying criminal act Defendants committed that constituted official misconduct. Furthermore, Plaintiff appears to have abandoned his claim of official misconduct as a racketeering activity—Plaintiff's response to Defendants' motion includes no discussion of official misconduct.

In his response to Defendants' motion, Plaintiff also claimed the following federal crimes as racketeering activity: (1) conspiracy against rights, 18 U.S.C. § 241, and deprivation of rights under color of law, 18 U.S.C. § 242. However, Plaintiff not only failed to plead these crimes in his complaint, but they are also not listed in § 35-45-6-1(e) as crimes constituting racketeering activity for purposes of RICO.

Therefore, Plaintiff's Indiana RICO claim fails because the Court cannot reasonably infer from the pleadings that Defendants are liable for the alleged racketeering activity.

(b) *Pattern of Racketeering Activity*

Even if the Court could reasonably infer that Defendants committed the alleged racketeering activity, Plaintiff cannot establish a "pattern" of racketeering activity on the basis of the facts alleged.

To constitute a pattern of racketeering activity under Indiana law, the RICO statute requires at least two incidents of related racketeering activity, committed within five years of each other. Ind. Code § 35-45-6-1(d).

Incidents may be related if they have a common intent, result, victim, accomplice, method of commission, or other distinctive characteristic and are not isolated events. *Id.*; *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). In addition, a pattern of racketeering activity must "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239. This requirement of continuity is both a closed- and open-ended concept. Closed-ended continuity refers to related racketeering activities that have

come to an end but have occurred over such a substantial period of time as to carry an implicit threat of repeated criminal activity into the future. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.3d 1016, 1022–23 (7th Cir. 1992)). In contrast, an open-ended period lacks the duration and repetition to establish continuity but, by its nature, projects into the future with a threat of repetition. *Id.* In determining whether continuity exists, the Court looks to: the number and variety of racketeering offenses, the duration of the racketeering activity, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986)).

Although no one factor is determinative of RICO continuity, duration is perhaps the most significant. *Id.* at 473–74 (quoting *Roger Whitmore's Auto. Servs., Inc., v. Lake Count*, 424 F.3d 659, 673 (7th Cir. 2005)). Indeed, the Seventh Circuit has consistently held that periods of less than one year fall short of the necessary continuity for a pattern of racketeering activity. *See, e.g.*, *id.* at 474 (holding ten-month period to be an insubstantial amount of time); *Roger Whitmore's*, 424 F.3d at 673 ("[W]e have not hesitated to find that closed periods of several months to several years did not qualify as "substantial" enough to satisfy continuity."); *Midwest Grinding*, 976 F.2d at 1024 (holding nine-month period insubstantial); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (holding thirteen-month period insubstantial); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (stating six months to be a "short period of time"); *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990) (holding eighteen-month period insubstantial).

In this case, the alleged racketeering activity began on December 28, 2006, and ended on September 20, 2007. The duration of the activity—nine months—is not a substantial period of time. Moreover, Plaintiff alleges only two types of crimes as racketeering activity. The acts for which Plaintiff complains were directed at only several recreation officers and were carried out through a small number of reports, one incident of turning off inmate showers, and two incidents of unwelcome logging of work activities. The alleged criminal offenses do not pose an implicit or "specific threat of repetition extending indefinitely into the future." *H.J. Inc.*, 492 U.S. at 242; *see also Midwest Grinding*, 976 F.2d at 1023. Nor do they represent the Indiana Department of Correction's ongoing and regular way of doing business or show that Defendants operate a "long-term association that exists for criminal purposes." *Id.* at 242–43; *see also Midwest Grinding*, 976 F.2d at 1023. Simply put, Plaintiff cannot establish the continuity requirement.

Accordingly, this is one more reason why Plaintiff's complaint fails to state a plausible RICO claim and must be dismissed.

**D. Conclusion**

Therefore, the Court GRANTS Defendants' motion for partial judgment on the pleadings (DE 27).

SO ORDERED on September 30, 2009.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE